IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROY T. TACATA (02), | ) | Crim. No. 05-00030 SOM (02) |
| | ) | Civ. No. 07-00008 SOM/LEK |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING PETITION FOR |
| | ) | WRIT OF HABEAS CORPUS |
| UNITED STATES OF AMERICA; | ) | PURSUANT TO 28 U.S.C. § 2255 |
| JOHN RATHMAN, Warden of the | ) | |
| Honolulu Federal Detention | ) | |
| Center | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255

I.        INTRODUCTION.

Roy T. Tacata seeks relief under 28 U.S.C. § 2255 ("Petition"), arguing that his guilty plea was involuntary because the Magistrate Judge who took his plea did not advise him that he would automatically be removed from the country as a consequence of his guilty plea.  Tacata also claims that his attorney was ineffective because she too failed to advise him that his guilty plea would automatically result in his removal from the country.  The Petition is denied.

II.       BACKGROUND.

On February 23, 2005, Tacata was charged in a First Superseding Indictment with possessing and aiding and abetting the possession of a stolen firearm in violation of 18 U.S.C. § 922(j) and § 924(a)(2) (Count 1), and with being a user of a

controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g) and § 924(a)(2) (Count 2).

On March 18, 2005, Tacata entered a guilty plea to Counts 1 and 2 of the First Superseding Indictment before Magistrate Judge Kevin S.C. Chang.  During the court's Rule 11 colloquy with Tacata, Magistrate Judge Chang asked Tacata whether he was a citizen of the United States.  Upon being informed by Tacata that Tacata was not a citizen, the court asked Tacata whether he understood "that a conviction in this case might affect [his] right to remain in the country."  Tacata indicated that he so understood.  See Transcript of Withdrawal of Not Guilty Plea and to Plead Anew Before the Honorable Kevin S.C. Chang (March 18, 2005) at 8.

On April 8, 2005, this district judge accepted the guilty plea Tacata entered before Magistrate Judge Chang.

On August 22, 2005, this court sentenced Tacata to fifteen months of imprisonment on each count, with the sentences to run concurrently.  Tacata was also sentenced to three years of supervised release on each count, with the supervised release terms to run concurrently.  Judgment was entered on August 25, 2005.  Tacata did not appeal.

On or about June 2, 2006, Tacata was issued a Notice to Appear by the United States Department of Justice, Immigration and Naturalization Service.  This Notice to Appear indicated that

Tacata was deportable because he had been convicted of an aggravated felony under § 922(g).

On or about June 22, 2006, Immigration Judge Dayna Beamer ordered Tacata removed from the United States to the Philippines. The Immigration Judge determined that Tacata was removable because of his aggravated felony conviction under § 922(g)(3).

On January 9, 2007, Tacata filed the present Petition.

III.    ANALYSIS.

   A.    Tacata is Still "In Custody."

The Government argues that, because Tacata finished serving his term of imprisonment, Tacata is no longer "in custody" such that he is eligible for § 2255 relief. This argument is not persuasive. Tacata was sentenced to fifteen months of imprisonment, followed by three years of supervised release. He was released from prison on or about February 10, 2006, and his supervised release term runs through on or about February 9, 2009.[1] The Ninth Circuit has no published opinion on point, but treating a term of supervised release as "custody" for purposes of § 2255 is consistent with Ninth Circuit case law indicating that a defendant serving supervised release should file a § 2255 petition, rather than a coram nobis petition. See,

---

[1] Although Tacata is now being held at the Federal Detention Center in Honolulu pending removal, he is considered to be on inactive supervised release.

e.g., United States v. Monreal, 301 F.3d 1127, 1132 (9th Cir. 2002) (noting that a petitioner who is still in custody may not bring a coram nobis petition because the more usual remedy of a § 2255 petition is available, and determining that, because a petitioner had not served his term of supervised release, he could not bring a coram nobis petition); United States v. Span, 75 F.3d 1383, 1386 & n.5 (9th Cir. 1996) (converting on appeal coram nobis petitions into § 2255 petitions when petitioners were serving sentences of probation); cf. United States v. Reyes, 48 F.3d 435, 438 (9th Cir. 1995) (noting that probation and supervised release are similar).  Other circuits have determined that a defendant serving a supervised release term is "in custody" for purposes of § 2255.  See United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999) ("A prisoner on supervised release is considered to be "in custody" for purposes of a § 2255 motion."); Kusay v. United States, 62 F.3d 192, 193 (7th Cir. 1995) (supervised release constitutes "custody" for the purposes of § 2255).  Tacata satisfies § 2255's requirement that he be "in custody."

        B.    Tacata's Petition is Untimely.

While Tacata is "in custody," his Petition fails because it is untimely.  There is a one-year limitation period for petitions under § 2255.  The limitation period runs from the latest of

>   (1) the date on which the judgment of
>   conviction becomes final;
>
>        . . . [or]
>
>   (4) the date on which the facts supporting
>   the claim or claims presented could have been
>   discovered through the exercise of due
>   diligence.

28 U.S.C. § 2255.

Tacata agrees that, because judgment was entered on August 25, 2005, and because he did not appeal, his Petition, filed in January 2007, is untimely under subsection (1).  See Petitioner's Supplemental Brief in Support of Petition (March 27, 2007) at 2.  Tacata argues that his Petition is nevertheless timely under subsection (4).  Id.  Tacata says that he did not become aware of the claims asserted in the Petition until early June 2006, when he received the Notice to Appear indicating that he was deportable because he had been convicted of an aggravated felony under § 922(g).

Tacata cites no authority supporting his argument that the limitation period in subsection (4) should run from June 2006, when he learned of removal proceedings, rather than March 2005, when he changed his plea before the Magistrate Judge.  For purposes of subsection (4), the limitation period began to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  See 28 U.S.C. § 2255(4).  That date is the date on

5

which Tacata pled guilty, March 18, 2005. On that date, Tacata had all the facts supporting his claims that he should have been informed that, if he pled guilty to Count 2, which charged a violation of § 922(g), he would be convicted of an aggravated felony and would be deportable. The danger of deportation was expressly pointed out to him by Magistrate Judge Chang.

In Salama v. United States, 2005 W.L. 1661830 (E.D.N.Y., July 15, 2005), the district court rejected the same argument being asserted here by Tacata. In December 2001, Salama pled guilty to an aggravated felony. During his plea colloquy the court informed Salama that his conviction might be a basis to seek his deportation. Id. at *4. Salama was sentenced in June 2003. When Salama attempted to renew his green card in September 2004, he was taken into custody because his aggravated felon status mandated his deportation. Salama filed his § 2255 petition on March 8, 2005. In determining whether Salama's § 2255 petition was timely, the court rejected Salama's contention that, under § 2255(4), the limitation period should run from the time he first learned that he would be deported, September 2004. The district court noted that when Salama actually discovered he was going to be deported "is of no legal significance because [Salama] *could have* discovered that he was deportable as an aggravated felon as early as . . . his plea hearing." Id. Like Salama, Tacata could have discovered through

the exercise of due diligence that he was deportable as an aggravated felon as early as March 18, 2005, when the Magistrate Judge told him that his guilty plea "might" affect his right to remain in the United States.

Tacata has also failed to establish that the limitation period should have been tolled until removal proceedings against him began. See United States v. Battles, 362 F.3d 1195, 1197 (9th Cir. 2004) (noting that § 2255's limitation period may be tolled when petitioners demonstrate extraordinary circumstances beyond their control that made it impossible to file a timely petition and that the extraordinary circumstances were the cause of the untimeliness).

Hammad v. United States, 2007 W.L. 186518 (N.D. Ind., Jan. 19, 2007), is analogous to the present case. Hammad had pled guilty in June 2005 to conspiracy to commit wire fraud in violation of 18 U.S.C. § 371. Hammad later filed a § 2255 petition, arguing that the court misinformed him of the consequences of a guilty plea when it told him during a Rule 11 colloquy that he "might" be deported when, because of the aggravated felony he was pleading to, he was actually deportable. Judgment was entered on September 21, 2005, and Hammad did not appeal. Hammad filed his § 2255 on December 18, 2006. Although more than a year had elapsed since Hammad's judgment became final (ten days after judgment was entered), Hammad claimed that, under

§ 2255(4), his petition was timely because he did not learn of the facts giving rise to his claim until September 6, 2006, when deportation proceedings were initiated against him. See id. at *1. The district court rejected Hammad's argument, noting that Hammad had received notice of the removal proceedings less than one-year after judgment became final. Because Hammad could have timely filed his § 2255 petition upon learning of the removal proceedings, the district court concluded that Hammad had not shown the extraordinary circumstances necessary to equitably toll the limitation period. Id. Like Hammad, Tacata received notice of his removal proceedings before the one-year limitation period in § 2255(1) expired. Given that Tacata had nearly three months to timely file his petition under § 2255(1) after he received notice that removal proceedings had begun against him, Tacata shows no extraordinary circumstances suggesting that the limitations period should be equitably tolled.

Even assuming Tacata's Petition was timely filed, he demonstrates no entitlement to relief.[2]

---

[2] The one-year limitation period contained in § 2255 is not jurisdictional, as it is subject to equitable tolling. See Battles, 362 F.3d 1195, 1197 (9th Cir. 2004) ("The statute of limitations contained in § 2255 is subject to equitable tolling."); Calderon v. United States Dist. Court for the Cent. Dist. of Cal., 128 F.3d 1283, 1289 (9th Cir. 1997) ("one-year timing provision is a statute of limitations subject to equitable tolling, not a jurisdictional bar"), overruled on other grounds by Calderon v. United States Dist. Court for Cent. Dist. of Cal., 163 F.3d 530, 540 (9th Cir. 1998) (en banc), en banc decision abrogated on other grounds by Woodford v. Garceau, 538 U.S. 202,

>   C.  Tacata is Not Entitled to § 2255 Relief Based on the Magistrate Judge's Informing Him Only that He Might be Deported, Instead of that He Almost Certainly Would Be Deported.

Although courts are required to inform a defendant of the direct consequences of a guilty plea, immigration consequences of a guilty plea are collateral, so a court need not inform a defendant of immigration consequences for a plea to be voluntary.  See United States v. Amador-Leal, 276 F.3d 511 (9th Cir. 2001).  In Amador-Leal, the Ninth Circuit noted that "it is now virtually certain that an aggravated felon will be removed." Id. at 516.  Notwithstanding that virtual certainty, the Ninth Circuit rejected Amador-Leal's argument that courts must inform defendants about the immigration consequences of aggravated felonies.  Because the removal of a defendant from the country remains beyond the control of the court, the Ninth Circuit designated the immigration consequences of aggravated felonies as collateral consequences of guilty pleas that courts have no obligation to tell defendants about.  Id.

Tacata recognizes that the Magistrate Judge did not have to tell him anything about the immigration consequences of

---

210 (2003); Pough v. United States, 442 F.3d 959, 965 (6th Cir. 2006) ("the one-year statute of limitations for filing a motion under § 2255 is not jurisdictional"); United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002) ("The one-year limitations period of the AEDPA is a statute of limitations that is not jurisdictional and is therefore subject to equitable tolling.").  The court may therefore examine Tacata's substantive claims.

his guilty plea.  Tacata argues, however, that, once the Magistrate Judge did so, he had to inform Tacata accurately. Because the Magistrate Judge told Tacata only that he might be deported, not that it was virtually certain that he would be deported, Tacata says that the Magistrate Judge misled him into thinking that there was a possibility that he would not be deported if he pled guilty.

Tacata says that United States v. Zhang, 401 F. Supp. 2d 233 (E.D.N.Y. 2005), is instructive.  Zhang noted that, in the Second Circuit, a plea may be rendered involuntary when a court misinforms a defendant that he could be deported if, in fact, the defendant would certainly become deportable because of the plea to an aggravated felony.  Id. at 242.  Although the court was under no obligation to inform the defendant of the immigration consequences of the plea, the court held that, if a judge "makes a statement that misleads the defendant into thinking deportation is not mandatory, then a constitutional violation occurs which provides sufficient grounds to vacate a plea."  Id.

Even assuming the Ninth Circuit agreed with Zhang, which this court does not posit, Zhang is distinguishable.  At the time Zhang was decided, the likelihood that a defendant convicted of an aggravated felony would be deported was "certain."  Zhang, 401 F. Supp. 2d at 242 (quoting INS v. St. Cyr, 533 U.S. 289, 325 (2001)).  At that time, courts lacked

10

jurisdiction to provide relief to noncitizens convicted of aggravated felonies.  See 8 U.S.C. § 1252(a)(2) (1999).

However, since that time, Congress has enacted a statute restoring jurisdiction to courts to conduct limited judicial review of constitutional claims and questions of law. In Fernandez-Ruiz v. Gonzales, 410 F.3d 585, 587 (9th Cir. 2005), a three-judge panel of the Ninth Circuit notes that "Section 106(a)(1)(A)(iii) of the REAL ID Act amends 8 U.S.C. § 1252 by adding a new provision, § 1252(a)(2)(D)."  This provision "restore[s] judicial review of constitutional claims and questions of law presented in petitions for review of final removal orders."  Id.  The three-judge panel notes that "Congress explicitly made the amendments restoring our jurisdiction retroactive," meaning that courts have jurisdiction over "all . . . pending or future petitions for direct review challenging final orders of removal, except as may otherwise be provided in § 1252 itself."  Id.  An en banc court subsequently adopted this part of the three-judge opinion.  Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1124 (9th Cir. 2006) (en banc) .

The President signed § 1252(a)(2)(D) into law on May 11, 2005, nearly two months after Tacata pled guilty.  Even assuming that the Magistrate Judge violated Rule 11 by telling Tacata only that he "might" be deported, rather than telling him that deportation was virtually certain, any such error was

harmless.  See Fed. R. Crim. P. 11(h).  To the extent the Magistrate Judge told Tacata that he "might" be deported, that statement was correct at the time Tacata claims to have discovered that his deportation was "automatic" rather than a mere possibility.³  By June 2006, when Tacata claims he realized that his deportation was "automatic" because removal proceedings began against him, limited jurisdiction to review orders of removal had been restored to the courts.  The Magistrate Judge's statements were ultimately correct.  Thus, Tacata appears to be arguing that, had he been told something that later became incorrect, he would have proceeded to trial or sought to plead to charges that did not involve an aggravated felony.  This makes no sense.

      The Government argues that Tacata is procedurally barred from attacking the voluntariness of his guilty plea because he did not appeal his conviction.  See United States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct

---

³The court additionally notes that Tacata argued to the Immigration Judge and on appeal that he had not been convicted of an aggravated felony that would make him deportable.  See Oral Decision of the Immigration Judge (June 22, 2006) at 2 (noting that Tacata had argued that the underlying judgment was "too broad to sustain removability"); Opening Brief to Board of Immigration Appeals (Aug. 23, 2006) at 3-4 (same).  Although rejected, this argument demonstrates that the Magistrate Judge was correct in informing Tacata that he "might" be deported, as Tacata's deportation depended on a number of factors and decisions beyond the court's control.

appeal and not showing cause and prejudice or actual innocence in response to the default."); United States v. Skurdal, 341 F.3d 921, 925 (9th Cir. 2003) ("'If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error.'" (quoting United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993))). Let us assume for the sake of argument that Tacata's contention that the Magistrate Judge misled him constitutes "cause" for his failure to appeal the voluntariness of his plea. See Skurdal, 341 F.3d at 925 ("to demonstrate 'cause' for procedural default, an appellant must show that some objective factor external to the defense impeded his adherence to the procedural rule" (quotations omitted)). Tacata still fails to show prejudice because any error was harmless. Whether Tacata's § 2255 petition is procedurally barred because he shows no prejudice or substantively unsound because any error was harmless, Tacata is not entitled to relief.

        D.    Tacata's Counsel Was Not Ineffective.

Tacata also claims that his counsel was ineffective because she "failed to advise him of the automatic deportation consequence of his plea agreement and subsequent conviction." Petition at 3. In this court's March 9, 2007, order requesting supplemental briefing, the court asked Tacata to clarify the

13

factual basis for this claim.  In his March 27, 2007, supplemental memorandum, Tacata indicated only that his counsel had failed to inform him of the immigration consequences of his guilty plea.  Tacata stated that, when his counsel learned that Tacata was not a United States citizen, she "should have advised [him] to consult with an attorney with experience in immigration matters."  Supp. Brief (March 27, 2007) at 7.  Tacata is therefore not claiming that his attorney misrepresented the probability of him being deported.

To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).  There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms."  Id. at 688.  Even if a petitioner can overcome the presumption of effectiveness, the petitioner must still demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly

deferential.  Id. at 689.  Tacata fails to demonstrate that his counsel's performance was deficient.

In United States v. Fry, 322 F.3d 1198, 1200 (2003), the Ninth Circuit held that an attorney is not ineffective when the attorney fails to inform a defendant of the immigration consequences of a conviction.[4]  This holding disposes of Tacata's claim that Tacata's counsel was ineffective in failing to tell him about the immigration consequences of his guilty plea.  Tacata fails to demonstrate that his counsel's performance was deficient, especially given the Magistrate Judge's statements concerning immigration consequences.

---

[4]Because Tacata is not claiming that his counsel misled him about the immigration consequences of his guilty plea, United States v. Kwan, 407 F.3d 1005 (9th Cir. 2005), is inapplicable.  Kwan noted that an attorney's performance may be deficient for purposes of an ineffective assistance of counsel claim when that attorney did not merely fail to inform the defendant about immigration consequences, but instead represented that the attorney had immigration expertise and actually misled the defendant about the immigration consequences of a conviction.  Id. at 1015-16.

IV.     CONCLUSION.

For the foregoing reasons, the court denies the Petition without a hearing pursuant to Local Rule 7.2(d).  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 2, 2007.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Roy T. Tacata v. United States of America, et al., Crim. No. 05-00030 SOM (02) and Civ. No. 07-00008 SOM/LEK; ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255